## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| TRI-VALLEY CORPORATION, et al., | Case No. 12-12291 (MFW) |
| and | (Jointly Administered) |
| TVC OPUS I DRILLING PROGRAM L.P., | Chapter 7 |
| Debtors. | Case No. 12-12294 (MFW) |
| CHARLES A. STANZIALE, JR., as Chapter 7 Trustee of Tri-Valley Corporation, and JEOFFREY L. BURTCH, as Chapter 7 Trustee for the Estate of TVC OPUS I DRILLING PROGRAM L.P., | Adv. Pro. No._____ |
| Plaintiffs, | |
| v. | |
| BEHROOZ SARAFRAZ, | |
| Defendant. | |

## COMPLAINT

Charles Stanziale, Chapter 7 Trustee for Tri-Valley Corporation, and Jeoffrey L. Burtch, Chapter 7 Trustee for the Estate of TVC Opus I Drilling Program, L.P. ("Plaintiffs" or "Trustees"), by and through their undersigned attorneys, as and for their Complaint for relief against Behrooz Sarafraz,  state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C.§§ 157(b)(1) and 1334(b) and (e).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a related proceeding pursuant to U.S.C. § 157(c)(1).

## THE PARTIES

2.     On August 7, 2012 (the "Petition Date""), Tri-Valley Corporation ("Tri-Valley"), Tri-Valley Oil & Gas Co. ("TVOG"), Select Resources Corporation, Inc. ("Select"), Tri-Valley Opus I Drilling Program L.P ("Opus" and, together with Tri-Valley, TVOG and Select, the "Debtors") each filed voluntary petitions (the "Petitions") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.     On March 25, 2013, the Court entered an Order converting the Debtors' cases from Chapter 11 to Chapter 7 of the Bankruptcy Code.

4.     On March 26, 2013, the Office of the United States Trustee appointed Jeoffrey L. Burtch as Chapter 7 Trustee of Opus's estate, and Charles A. Stanziale, Jr. as Chapter 7 Trustee of Tri-Valley's estate.

5.     Behrooz Sarafraz ("Sarafraz") is an individual who upon information and belief resides in Tiburon, California.

**The Debtor's Business**

6.     Tri-Valley was formed in 1971 as a Delaware corporation, was a reporting company under the Securities Exchange Act of 1934 ("Exchange Act"), and between 2002 and 2010 filed quarterly, annual, and other reports with the U.S. Securities and Exchange Commission ("SEC").  During this period, Tri-Valley stock was traded on the American Stock Exchange ("Amex") under the symbol TIV.  Tri-Valley was a crude-oil and natural-gas exploration, exploitation, development and producing company engaged in the business of locating and developing hydrocarbon resources in the State of California.

7.     Tri-Valley had a wholly-owned subsidiary, TVOG, to operate its oil and gas activities.  Lynn Blystone was the CEO of TVOG at all relevant times.

**The Opus Partnership**

8.     In 2002, Tri-Valley established Opus as a Delaware limited partnership for the purpose of exploring, drilling, developing, and operating oil and gas prospects in California and Nevada.

9.     Tri-Valley was the managing general partner of Opus and held a 25% working interest in the Opus properties.

10.     Tri-Valley planned to raise $100 million from general and limited partners of Opus through the sale of units of partnership interests ("Opus Units") for Opus to conduct wildcat oil- and gas-drilling explorations.    Between February 2002 and March 2010, approximately $97 million was raised through the private placement of Opus Units.  Overall, approximately 73 general partners and 222 limited partners contributed those funds.

11.     In connection with the capital formation for Opus, Tri-Valley in 2002 issued a Private Placement Memorandum ("PPM"), wherein investors were given important information about Opus, the Unit offering and its terms, the drilling program, Tri-Valley, TVOG, investor suitability, risk guidelines, and other disclosures relating to their investment in Opus.  The PPM was amended on March 20, 2003, July 14, 2003, November 8, 2004, and September 27, 2006.

12.     The PPM expressly stated that "[Tri-Valley]'s officers will sell interests and will not receive any sales commission or other remuneration for such sales.  We may also sell interests through broker-dealers, in which case sales commissions of up to 9% of the purchase price of such interests [sic.].  We may also use finders to introduce us to prospective participants and may pay finders' fees of up to 9% of the purchase price as finders' fees."  The PPM states

that "[a]s of the date of this memorandum, we have not entered into any agreements with any broker-dealer to sell units."

13.    The PPM disclosed, in the "Sources and Uses of Funds" section, that Tri-Valley, through TVOG, was to be compensated under turnkey-drilling agreements.    In this regard, investors agreed to pay Tri-Valley a fixed turnkey price for the acquisition of leases, evaluation, re-entry, and drilling of wells for certain projects specified in the PPM.    Although Tri-Valley was given authority to enter into turnkey arrangements for other wells, the rates charged for those projects could not be above competitive pricing for the completion and equipment of the wells.

14.    The Opus Partnership Agreement (Sections 3.03 and 6.03) bars any partner from withdrawing its capital contribution without the unanimous consent of the partnership.

**The Sale of Opus Units and Tri-Valley Stock through Unregistered Brokers**

15.    From 2002 to 2010, Blystone directed and controlled the sale of the Opus Units and the sale of Tri-Valley's stock.

16.    Blystone deliberately withheld from the Tri-Valley board and the Tri-Valley and Opus investors that he had entered into an unwritten agreement with Sarafraz, an unregistered broker, to sell the Opus Units and the stock of Tri-Valley and to pay Sarafraz substantial commissions for these sales.[1]

17.    Sarafraz, who was not registered as a broker-dealer with the SEC, the Financial Industry Regulatory Authority (FINRA), or any other applicable state regulatory authority during all relevant times, acted as a broker, promoting and selling Opus Units and the common stock of Tri-Valley to investors in the U.S. and abroad.

---

[1] One Tri-Valley director, Thomas Gamble, knew about Sarafraz and the commissions on account of his direct dealings with Sarafraz.

18.     Sarafraz was convicted on January 22, 2001, of a criminal offense under U.S. law (i.e, lying to investigators in connection with the sale and purchase of securities) in a case before the U.S. District Court for the District of New Jersey.  He was sentenced to one year of probation during which he was barred from representing or advising any individual or entity in connection with the purchase, offer, solicitation, or sale of any investment product or security.  Sarafraz did not disclose his conviction to any investor or Tri-Valley, with the possible of exception of Blystone who, if he knew, did not disclose it to Tri-Valley's Board of Directors or to the investors.

19.     During the relevant period, Sarafraz worked full time locating individuals to invest in the securities offered by Opus and Tri-Valley.

20.     Sarafraz met with prospective investors in person, spoke with them on the telephone, or communicated via the internet.  He described the investment program to investors and recommended they purchase Opus Units and/or securities of Tri-Valley and its affiliated entities.  During the relevant period, Sarafraz sold the majority of securities to investors.  Accordingly, Sarafraz engaged in the business of effecting transactions in securities for the account of others.

21.     Blystone agreed to pay and did cause Tri-Valley and Opus to pay Sarafraz a 17% commission on the sale of Opus Units and Tri-Valley stock.

22.     Tri-Valley and Opus paid those commissions to Sarafraz even though Tri-Valley was not authorized to pay those high commissions under the PPM, the commissions had not been disclosed to the Opus partners and Tri-Valley investors, and Sarafraz was violating federal and state securities laws in selling these securities and receiving the commission.

23.     In all, Opus paid Sarafraz in excess of $9.4 million as commissions for the sale of Opus Units between 2002 and 2010.

24.     Tri-Valley paid Sarafraz in excess of $3.55 million as commissions for the sale of the same Opus Units.

25.     Tri-Valley paid Sarafraz in excess of $4.75 million as commissions for the sale of Tri-Valley stock between 2004 and 2009.

26.     In total, Sarafraz received approximately $17.78 million in commissions for the sale of Opus Units and Tri-Valley stock.

27.     Sarafraz also received from Tri-Valley a 5% commission on the profits (approximately $13.4 million) made on turnkey-drilling operations that were charged to Opus.

28.     Opus has filed proofs of claim in Tri-Valley's bankruptcy case demanding an allowance in the approximate amount of $11.3 million against Tri-Valley's estate for all the commissions paid on account of sales of Opus Units.

**Improper Repayment of Partner's Contribution**

29.     In the fourth quarter of 2008, Blystone allowed Sarafraz to withdraw $1,150,000 of Sarafraz's invested funds as an Opus partner.

30.     Under the Opus Agreement of Partnership, Sarafraz was not entitled to withdraw his investment without the consent of all the partnership.  That consent was never sought or given.

31.     Alternatively,  the $1,150,000 paid by Opus to Sarafraz in the fourth quarter of 2008 was a demand loan which, to date, has not been repaid.

**Other Claims Asserted against the Debtor by Opus**

32.     Opus has also included in its proof of claim against Tri-Valley's estate a demand

for an allowance for improper charges by Tri-Valley and/or TVOG.

33.     Between 2002 and 2009, Tri-Valley charged Opus $24.6 million for turnkey

drilling for 13 wells.

34.     Tri-Valley's actual costs for the 13 wells was approximately $11.4 million, which

generated a profit for Tri-Valley of approximately $13.2 million, a profit margin of more than

100% over actual costs, well in excess of competitive pricing for the same services.

35.     As alleged above, Sarafraz received 5% of those turnkey profits.

**SEC Complaint**

36.     On May 15, 2014, the SEC filed a complaint against Sarafraz in the U.S. District

Court for the Northern District of California, San Francisco Division, at Case No. 3:14-cv-

02252, alleging that Sarafraz, as a result of his sales activities on behalf of Tri-Valley and Opus,

acted as an unregistered broker in violation of Section 15(a) of the Exchange Act, 15 U.S.C.

§ 78o(a). The SEC sought to permanently enjoin Sarafraz from violating Section 15(a) in the

future, and an order requiring him to disgorge all ill-gotten gains and pay a civil penalty under

Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

37.     On the same day, without admitting or denying the allegations of the complaint,

Sarafraz consented to the entry of a Final Judgment against him, which, among other things,

permanently restrained and enjoined him from violating Section 15(a) of the Exchange Act,

ordered him to pay disgorgement in the amount of $16,406,459, plus prejudgment interest in the

amount of $6,075,859.87, and ordered him to pay a civil penalty in the amount of $50,000 under

Section 21(d)(3) of the Exchange Act. As part of the consent filing, Sarafraz agreed that he

would not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the SEC complaint or creating the impression that the SEC complaint is without factual basis.

## FIRST CLAIM FOR RELIEF

38.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 37 set forth above as if fully set forth herein.

39.     Under California Corporation Code § 25210, the payment of commissions to unregistered brokers is not allowed, and any agreement purporting to pay such commissions is illegal and void.

40.     Investors who bought Opus Units and the Opus Trustee have filed proofs of claim against Plaintiffs demanding the return of the commissions paid.

WHEREFORE, Plaintiffs demand the recission of any agreement with Sarafraz and the restitution by Sarafraz of the approximately $17.8 million in commissions they paid to Sarafraz.

## SECOND CLAIM FOR RELIEF

41.     Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 40 set forth above as if fully set forth herein.

42.     Under the California Unfair Competition Law ("UCL"), "unfair competition" is defined as any unlawful, unfair, or fraudulent business act or practice.

43.     Sarafraz violated the UCL by his violation of Section 25210 of the California Corporation Code.

WHEREFORE, Plaintiffs demand the restitution of the approximately $17.8 million in commissions they paid to Sarafraz.

## THIRD CLAIM FOR RELIEF

44.     Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 43 set forth above as if fully set forth herein.

45.     Sarafraz received 5% of the turn key profits charged by Tri-Valley to Opus between 2002 and 2009.

46.     Sarafraz's share of the turn key profits amounted to approximately $660,000.

47.     Sarafraz offered no consideration for the transfer of those $660,000 (the "Transfers").

48.     The Transfers occurred when the Debtors were insolvent or about to become insolvent.

49.     The Transfers were fraudulent conveyances under Section 548 of the Bankruptcy Code and/or fraudulent conveyances under applicable state law and Section 544 of the Bankruptcy Code.

WHEREFORE, Plaintiffs demand that the Transfers be voided and that Sarafraz pay back to Plaintiffs the $660,000 received.

## FOURTH CLAIM FOR RELIEF

50.     Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 49 set forth above as if fully set forth herein.

51.     Sarafraz's withdrawal of $1,150,000 in capital contributions to Opus was improper, unauthorized, and in breach of the Opus Partnership Agreement.

52.     Opus has demanded that Tri-Valley pay back the $1,150,000 improperly withdrawn by Sarafraz, with interest.

WHEREFORE, Plaintiffs demand that Sarafraz pay $1,150,000 to Opus, plus prejudgment and post judgment interest, on account of the improper withdrawal of his Opus capital contributions.

### FIFTH CLAIM FOR RELIEF (ALTERNATIVE COUNT)

53.     Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 52 set forth above as if fully set forth herein.

54.     Alternatively, Sarafraz requested and received a demand loan from Opus in the amount of $1,150,000, as follows: $250,000 on October 31, 2008; $300,000 on November 6, 2008; $200,000 on November 14, 2008; and $400,000 on November 19, 2008.

55.     Despite demand therefor, Sarafraz has refused and failed to repay the loan he received from Opus.

56.     Sarafraz is indebted to Opus in the principal amount of $1,150,000, plus interest at the legal rate of 10% per annum from and after the date of each disbursement to Sarafraz as set forth above.

WHEREFORE, Plaintiffs demand that Sarafraz pay $1,150,000 to Opus, plus prejudgment and post judgment interest at the legal rate of 10%, on account of the loan from Opus.

Dated: June 12, 2014
Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

By: */s/ William F. Taylor, Jr.*
William F. Taylor, Jr. (DE No. 2936)
Kate R. Buck ( DE No. 5140)
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone 302.984.6300
wtaylor@mccarter.com
kbuck@mccarter.com

*- and -*

Charles A. Stanziale, Jr.
Jeffrey T. Testa
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

*Attorneys for Co- Plaintiff, Charles A. Stanziale,*
*Chapter 7 Trustee for Tri-Valley Corporation*

**COZEN O'CONNOR**

By: */s/ Mark E. Felger*
Mark E. Felger (DE No. 3919)
Barry M. Klayman (DE No. 3676)
1201 N. Market St., Ste. 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
mfelger@cozen.com
bklayman@cozen.com

*Attorneys for Co-Plaintiff, Jeoffrey L. Burtch,*
*Chapter 7 Trustee for the Estate of TVC Opus I*
*Drilling Program, L.P.*